UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-80038-CR-ROSENBAUM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JEFFREY EMIL GROOVER,

        Defendant.
_____/

## ORDER DENYING MOTION TO WITH DRAW GUILTY PLEA

This matter is before the Court upon Defendant Jeffrey Emil Groover's Motion to Withdraw Guilty Plea [ECF No. 95]. The Court has considered all supporting and opposing filings and the record in this case. For the reasons set forth below, the Court denies Defendant's Motion to Withdraw Guilty Plea.

### *I.  Background*

On January 25, 2013, Defendant was charged by Complaint with wire fraud, in violation of 18 U.S.C. § 1343, and aggravated identity theft, in violation of 18 U.S.C. § 1028A, relating to an alleged scheme to obtain fraudulent tax refunds in the names of people whose identities were stolen. *See* ECF No. 3.  At Defendant's initial appearance on January 31, 2013, the Court appointed the Federal Public Defender's Office as Defendant's counsel. *Id.*

The grand jury returned an Indictment against Defendant on February 14, 2013. *See* ECF No. 17.  The Indictment charged Defendant with four counts of making false claims to the Internal

Revenue Service, in violation of 18 U.S.C. § 287, relating to the same scheme that was charged in the Complaint. *Id.*

On May 30, 2013, the Government and Defendant entered into a Plea Agreement in which Defendant pled guilty to the four-count Indictment. *See* ECF Nos. 39. After a thorough plea colloquy where Defendant was represented by counsel, the Court accepted Defendant's guilty plea to the four-count Indictment. *See* ECF Nos. 37, 103. Among other dialogue that occurred during the change-of-plea colloquy, the Court asked the following questions, and Defendant provided the following responses:

> Q: . . . So let me ask you, do you feel like you are in full possession of your mental faculties at this time? You are able to make this important decision?
>
> A: Yes.
>
> * * * * *
>
> Q: . . . [H]ave you had an opportunity to fully discuss [the charges in the Indictment] and the case in general with your attorney?
>
> A: Yes, I have.
>
> Q: Have you had enough time to think about changing your plea to guilty and talk about that with your attorney?
>
> A: Yes, I have.
>
> Q: Are you fully satisfied with your attorney and the advice and representation that he has given you in this case?

A: Yes.

\* \* \* \* \*

Q: Mr. Groover, did you read and thoroughly understand this plea agreement before you signed it?

A: Yes, I did.

Q: Did you sign it because you agreed with it?

A: Yes, I did.

Q: Did you have an opportunity to discuss this plea agreement with your lawyer thoroughly before you signed it?

A: Yes, I did. Thoroughly.

\* \* \* \* \*

Q: . . . Now, do you understand the terms of the plea agreement, Mr. Groover?

A: Yes, I do.

\* \* \* \* \*

Q: . . . Let me . . . direct your attention to paragraph 7. In that paragraph the Government is agreeing that it is going to recommend at sentencing that the Court reduce your Sentencing Guidelines level by 2 levels for your affirmative and timely acceptance of personal responsibility. Do you understand?

3

A: Yes, I do.

Q: And if at the time of sentencing your offense level is determined to be a 16 or higher, the Government is going to file a motion requesting that you get a third point off for your acceptance of responsibility. Do you understand?

A: Yes, Your Honor.

Q: But . . . the Government will not have to make the motion or make the recommendation for the 2 points off or the motion for the third point off if you do any of the following 3 things: First, if you fail or refuse to make a full, accurate, and complete disclosure to the Probation Office of the circumstances surrounding your relevant offense conduct and your financial status; second, if you are found to have misrepresented facts to the Government before you entered into the Plea Agreement, or third, if you commit any misconduct after you enter into the Plea Agreement. Do you understand that if you do any of these 3 things the Government will be released from its obligation to make the recommendation and the motion that we have just discussed?

A: Yes, Your Honor.

* * * * *

Q: . . . Have you and your attorney discussed how the advisory Sentencing Guidelines may apply to your case?

A: Yes, we have.

Q: Do you need any more time to do that?

A: No.

4

> Q: . . . Mr. Groover, have you now had enough time to consider and discuss with your attorney whether you wish to plead guilty to the charges?
>
> A: Yes, I have.
>
> Q: And how do you now plead to the charges of Counts I through IV?
>
> A: Guilty.
>
> Q: To each and every one?
>
> A: Yes, Your Honor.
>
> * * * * *

ECF No. 102. As discussed in the plea colloquy, paragraph 7 of the Plea Agreement provides, in relevant part,

> . . . The United States, however, will not be required to make this motion [for two points off for affirmative and timely acceptance of personal responsibility] and this recommendation [for a third point off for super-acceptance of personal responsibility] if the defendant: . . . (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or representations to any governmental entity or official.

ECF No. 39 at ¶ 7.

On July 12, 2013, the Probation Office issued the draft Presentence Investigation Report ("PSR"). *See* ECF No. 42. The PSR recommended that Defendant receive two levels off his Advisory Sentencing Guidelines offense level for his acceptance of personal responsibility under

Section 3E1.1(a), U.S.S.G. *Id.* at ¶ 33. In addition, in accordance with Section 3E1.1(b), U.S.S.G., the PSR recommended that Defendant receive a third point off his offense level for super-acceptance of personal responsibility. *See id.* at ¶ 34. On August 13, 2013, the Probation Office filed its Addendum to the Presentence Report, in which it stated that the Government had not objected to the draft PSR. *See* ECF No. 45-1.

The following week, on August 19, 2013, the Federal Public Defender's Office filed a motion seeking to be relieved of its appointment because Defendant had privately retained counsel in the meantime. *See* ECF No. 48. The Court granted the Federal Public Defender's Office request upon the filing of an appearance by attorney Henry Marines. *See* ECF Nos. 49, 50. Because of new counsel's appearance in the case, Defendant sought a continuance of his sentencing date, which had previously been set for September 9, 2013. *See* ECF No. 51. The Court granted the motion and reset sentencing for October 15, 2013. *See* ECF No. 52.

Before sentencing could occur on the new date, however, on October 11, 2013, the Government moved this Court to revoke Defendant's pre-trial release based on his alleged commission of a new crime. *See* ECF No. 53. In its motion, the Government asserted that "Groover fraudulently opened a PNC checking account in the name of PNC account holder K.M., without K.M.'s knowledge or consent. Groover set up the checking account to access K.M.'s equity line of credit. The same day the account was opened, Groover withdrew $15,000 from the account by accessing K.M.'s equity line of credit. The bank's surveillance camera captured Groover conducting this withdrawal." ECF No. 53 at 2. In support of its motion, the Government filed the affidavit of Detective David Mittauer of the Sunrise Police Department. *See* ECF No. 53-1 at 2-4. According to Detective Mittauer's affidavit, the fraudulent checking account was established online on

September 25, 2013, and Defendant obtained the $15,000.00 from the bank on September 27, 2013, *see id.* at 2-3—both dates well after Defendant entered his guilty plea on May 30, 2013, and after the PSR had been issued.

In response to the Government's motion seeking to revoke bond, the Court issued an arrest warrant for Defendant. ECF No. 54. Defendant was arrested and did not contest the revocation of his bond. *See* ECF No. 59.

Because of the new arrest, the parties jointly sought another continuance of the sentencing date "to allow the parties to sort through the issues raised by defendant's new case and to file appropriate sentencing objections and/or motions related to this new conduct." ECF No. 55. Based on the circumstances, the Court granted the motion and rescheduled the sentencing for January 6, 2014. *See* ECF No. 63.

On November 17, 2013, the Government filed objections to the PSR, based on Defendant's alleged commission of the September 2013 crime. *See* ECF No. 61. Specifically, the Government averred that Defendant lost his three-level reduction for acceptance of responsibility because he engaged in a crime while on pre-trial release. *Id.*

On December 17, 2013, the Probation Officer issued a new PSR, which agreed with the Government's objections and recalculated Defendant's Advisory Sentencing Guidelines level without subtracting the three points for acceptance of responsibility and super-acceptance of responsibility. *See* ECF No. 64 at ¶¶ 30, 4.

In January 2014, the parties once again sought a continuance of the sentencing, explaining that "Defendant and the Government are involved in plea negotiations to resolve a pending matter

via the filing of an information, without the need for an indictment." ECF No. 67. The Court granted the continuance and eventually reset sentencing for April 11, 2014. *See* ECF No. 68, 71.

On March 5, 2014, Defendant filed a motion to proceed *pro se,* which was granted on March 19, 2014.[1] On March 24, 2013, Defendant filed his Objections to the revised PSR, in which he claimed that he was entitled to a three-level reduction as indicated in the original PSR. *See* ECF No. 90. In his Objections, Defendant stated, "If the government seeks to deny defendant the reduction of points for acceptance of 'timely' responsibility then defendant may withdraw his plea of guilty, as is his right." *Id.* at 4.

The Government did not agree to reinstate the original PSR and Defendant filed his *pro se* motion to withdraw his guilty plea. *Id*.

## *II. Discussion*

A defendant has an absolute right to withdraw a guilty plea before the district court accepts it. Fed. R. Crim. P. 11(d)(1). After the district court has accepted a defendant's guilty plea, and before sentencing, however, the defendant may withdraw a guilty plea only if (1) the district court rejects the plea agreement or (2) "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(A)-(B). This permissive withdrawal rule is to be liberally construed, but no absolute right to withdraw a guilty plea exists. *United States v. Buckles,* 843 F.2d 469, 471 (11th Cir. 1988). Because this Court has not rejected the plea agreement, Defendant may withdraw his guilty plea, if at all, only if he satisfy the standard requiring that he show a fair and just

---

[1] United States Magistrate Judge Patrick M. Hunt conducted a *Faretta* hearing before granting Defendant's request to proceed *pro se. See* ECF Nos. 85, 88.

reason for seeking withdrawal.

In his Motion to Withdraw Guilty Plea [ECF No. 95], Defendant states no reason that this Court should allow his to withdraw his guilty plea. To the extent that the absence of any basis for withdrawal of his guilty plea can be construed as Defendant's mistaken view that he has an absolute right to withdraw his guilty plea at any time, as previously explained above, no such right exists under current Eleventh Circuit precedent. This fact alone would justify denial of Defendant's Motion to Withdraw Guilty Plea.

But recent filings in this case appear to suggest that Defendant seeks to withdraw his guilty plea because the Government no longer agrees to recommend that Defendant receive two points off his offense level for acceptance of responsibility or a third point off for super acceptance, as a result of the September 2013 incident. *See* ECF No. 90. This basis for withdrawal of Defendant's guilty plea can fare no better than Defendant's naked assertion of a right to withdraw his guilty plea, as the circumstances reflect that it is not a "fair and just reason" to withdraw his plea in this case.

In determining whether a defendant has met his burden to show a "fair and just reason" to withdraw a plea, a district court may consider the totality of the circumstances surrounding the plea, including whether (1) close assistance of counsel was available; (2) the plea was knowing and voluntary; (3) judicial resources would be conserved; and (4) the government would be prejudiced if the defendant were allowed to withdraw his plea. *Id.* at 471–72. If a defendant does not satisfy the first two prongs of the *Buckles* analysis, the court need not "give particular attention" to the others. *United States v. Gonzalez–Mercado,* 808 F.2d 796, 801 (11th Cir. 1987).

This Court is charged with evaluating "[t]he good faith, credibility and weight of a defendant's assertions in support of a motion to withdraw a guilty plea . . . ." *United States v. Brehm,*

9

442 F.3d 1291, 1298 (11th Cir. 2003) (internal quotation marks and alteration omitted).  In considering these issues, the Court keeps in mind that a strong presumption exists that statements made by a defendant during the plea colloquy are true. *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994).  Consequently, a defendant bears a heavy burden to show that his statements under oath were false. *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988).  Where the colloquy at the plea hearing sufficiently probed the knowing and voluntary nature of the guilty plea, a district court does not abuse its discretion by declining to hold an evidentiary hearing on the motion to withdraw. *See United States v. Stitzer,* 785 F.2d 1506, 1514 (11th Cir. 1986).

At the plea hearing, the district court satisfies its obligation to inquire into the knowing and voluntary nature of a guilty plea by addressing three "core" concerns: "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *United States v. Hernandez–Fraire,* 208 F.3d 945, 949 (11th Cir. 2000) (internal quotation marks omitted). Under Rule 11, Fed. R. Crim. P., the district court must "inform the defendant of his rights relevant to his guilty plea and determine that he understands them." *Brehm,* 442 F.3d at 1298.  Rule 11 gives the district court specific obligations that effectuate a knowing and voluntary plea, including the obligation to inform the defendant of his right to plead not guilty, his right to counsel, his right to jury trial, his rights at trial, his waiver of those rights as a result of a plea, the nature of the charges, the minimum and maximum penalties he faces as a result of a plea, and any limitation on appealing his conviction or sentence that might be contained in his plea agreement. Fed. R. Crim. P. 11(b)(1)(B)-(N).  In this case, the plea colloquy satisfied all of these requirements.

*A. Defendant had close assistance of counsel.*

The Government claims that Defendant "[r]eceived close assistance of counsel from the Federal Public Defender's Office from the time of filing of the complaint to well after the defendant's plea of guilty." ECF No. 101 at 5. Defendant does not seem to dispute this, nor could he, based on the lengthy docket in this case, which reflects that Defendant was represented by either the Federal Public Defender's Office or Henry Marines, an attorney in private practice, at all times in this case until Defendant elected to proceed *pro se*.

The record reflects that Defendant enjoyed close assistance of counsel. For example, Defendant stated during his plea colloquy that he "had an opportunity to fully discuss [the charges in the Indictment] and the case in general with [his] attorney"; that he "had enough time to think about changing [his] plea to guilty and talk about that with [his] attorney"; that he was "fully satisfied with [his] attorney and the advice and representation that he [had] given [Defendant] in this case"; that he had "thoroughly" discussed the plea agreement with his attorney before signing it; that he and his attorney had discussed how the advisory Sentencing Guidelines might apply to his case and that he did not any more time to engage in further such discussions; and that he had had "enough time to consider and discuss with [his] attorney whether [he wished] to plead guilty to the charges." *See* ECF No. 102. In short, the plea colloquy evidences the fact that Defendant had close assistance of counsel before and during (and even after, until he decided to proceed *pro se*) his change of plea.

*B. Defendant's plea was knowing and voluntary*

In order for a plea to be knowing and voluntary, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must

11

know and understand the consequences of his guilty plea. *United States v. Jones*, 143 F.3d 1417, 1418-19 (11th Cir. 1998). The plea colloquy demonstrates that all of the *Jones* factors were satisfied in this case.

First, Defendant's plea was not coerced. For example, Defendant said that he had time to think about changing his plea to guilty and to discuss with his attorney. *See* ECF No. 102 at 5. Defendant further claimed that he was satisfied with his attorney. *Id*. In addition, Defendant denied that anyone had threatened him in any way to persuade him to accept the plea agreement in the case. *Id.* at 12. And he declined additional time to speak with his attorney about immigration consequences of his guilty plea or about how the advisory Sentencing Guidelines might apply to his case. *Id.* at 17. Nor does any indicia of coercion exist anywhere in the record.

The record further shows that Defendant fully understood the charges against him. Defendant was asked if he knew what a felony was, and he answered in the affirmative. *Id*. Indeed, Defendant acknowledged that he had pled guilty to a felony before, and he understood the ramifications of his plea. *Id.* The Court also reviewed with Defendant each of the essential elements of the crime to which Defendant pled guilty. *See id.* at 22-23. Defendant stated that he understood each of the essential elements and that he was aware that, had he gone to trial, the Government would have been required to prove each of these essential elements of the crime beyond every reasonable doubt. *Id.* at 23. These excerpts in particular, and the transcript in general, leaves no doubt that Defendant understood the nature of the charges to which he pled guilty.

Turning to the paragraph of the Plea Agreement regarding the three-level reduction, Defendant fully understood that his improper conduct while on release may jeopardize the reduction.

First, the Plea Agreement itself specified that consequence in plain terms. And Defendant testified that he "read and thoroughly [understood]" the Plea Agreement before he signed it. *Id.* at 6. He further stated that he signed it because he agreed with it, and he described himself as having had the chance to "thoroughly" discuss the Plea Agreement with his attorney before he signed it. *Id.* at 7.

Second, during the plea colloquy, the Court read Defendant the pertinent parts of paragraph 7's requirement that Defendant not engage in any misconduct after entering into the Plea Agreement. *See id.* at 9-10. Defendant responded that he understood that if he engaged in misconduct, the Government would be "released from its obligation to make the recommendation and the motion" for the points off for acceptance of responsibility and super-acceptance. *Id.* There is nothing unfair about holding Defendant to the very agreement that he knowingly, freely, and voluntarily elected to make.

C.  *Conservation of Judicial Resources and Prejudice to Defendant*

As discussed earlier, the third and fourth elements of the *Buckles* analysis do not carry as much as weight as the first two. It is undisputed, however, that judicial resources would not be conserved by allowing Defendant to withdraw his guilty plea. *See United States v. Luczak*, 2009 WL 1514654 (May 28, 2009 M.D. Fla.) (noting that judicial resources would not be conserved by allowing the needless withdrawal of guilty pleas).

Moreover, Defendant is in a superior position to articulate any prejudice to him by the denial of his Motion to Withdraw Guilty Plea. He has failed to note any prejudice to him, and the Court cannot conceive of any under the circumstances.

In sum, the record clearly shows that Defendant's guilty plea was knowing and voluntary.

13

Defendant was warned that his three-level reduction was predicated upon his future compliance with the law. Defendant knew and understood this, yet he chose to break the law anyway. Now Defendant must Defendant's Motion to Withdraw his Guilty Plea is lacking any factual or legal basis. Therefore, his Motion [ECF No. 95] is **DENIED.**

**DONE AND ORDERED** in Fort Lauderdale Florida, this 14th day of April 2014.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of record

Jeffrey Emil Groover
10498-074
Broward County Jail-Main Jail
Inmate Mail/Parcels
Post Office Box 9356
Ft. Lauderdale, FL 33310